UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
===========================================X
MICHELLE MCGOWAN and JOHN MCGOWAN,

                                    Plaintiffs,               **COMPLAINT**

    -against-                                      Civil Docket No.:

ASSOCIATED UNIVERSITIES, INC.

                                  Defendant.
===========================================X


     Plaintiffs MICHELLE MCGOWAN and JOHN MCGOWAN, by their attorneys JOSEPH LANNI and THE JACOB D. FUCHSBERG LAW FIRM, L.L.P., as and for their Verified Complaint, complaining of the defendants, upon information and belief, allege the following:


## PARTIES

1. At all times subsequently referenced, plaintiff MICHELLE MCGOWAN was and is a resident, domicile and citizen of the State of New York.

2. At all times subsequently referenced, plaintiff JOHN MCGOWAN was and is a resident, domicile and citizen of the State of New York.

3. At all times subsequently referenced, plaintiff MICHELLE MCGOWAN[1] resides at 53 Park Avenue, Patchogue, NY 11772.

---

[1] MICHELLE MCGOWAN is variously referred to as Ms. MCGOWAN and MCGOWAN throughout this Complaint.

4.  At all times subsequently referenced, plaintiff JOHN MCGOWAN resides at 53 Park Avenue, Patchogue, NY 11772.

5.  At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and still is a purported domestic corporation organized and existing under the laws of the State of New York.

6.  At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and still is a domestic corporation with its principal place of business located at 1400 16th Street NW, Washington, DC  20036-2252.

7.  At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that conducted business operations in the State of New York.

8.  At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that transacted business within the State of New York.

9.  At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that derived substantial revenue from conducting business operations, activities and transactions in the State of New York.

10. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that derived substantial revenue from goods used or consumed and/or services rendered in the State of New York.

11. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that expected or should reasonably have expected that its acts, omissions and conduct had consequences in the State of New York.

12. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that derived substantial revenue from interstate or international commerce in the regular course of its business operations, activities and transactions within the State of New York.

13. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that is a research management company that operates, manages, directs, controls and supervises facilities, including research laboratories, for the U.S. government.

14. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic corporation that is a research management company that operates, manages, directs, controls and supervises facilities, including research laboratories, for the U.S. Department of Energy (USDOE).

15. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was the operating contractor that operated, managed, directed, controlled and supervised a facility, including a research laboratory, for the U.S. Department of Energy known as

Brookhaven National Laboratory located in Upton, NY, during the approximate period 1947 – 1998.

16. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., occupied, operated, managed, directed, controlled, and supervised the land, property, buildings, structures and appurtenances known as Brookhaven National Laboratory located in Upton, NY, during the approximate period 1947 – 1998.

17. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was in possession of the land, property, buildings, structures and appurtenances known as Brookhaven National Laboratory located in Upton, NY, during the approximate period 1947 – 1998.

18. At all times subsequently referenced, the U.S. Department of Energy (USDOE) owned Brookhaven National Laboratory.

**JURISDICTION**

19. That the subject matter jurisdiction of this Court is invoked since the defendant's transactions, acts, omissions, and conduct that form, in pertinent part, the factual basis of the causes of action in plaintiffs' Complaint occurred at Brookhaven National Laboratory on a federal enclave, i.e., on land owned by and under the jurisdiction of the U.S. Department of Energy, that is located within the Town of Upton, County of Suffolk, and State of New York.

See, Schiappa v. Brookhaven Science Associates, LLC, 403 F. Supp. 2d 230 (E.D.N.Y. 2005).

## VENUE

20. That the venue of this action is premised upon the defendants' transactions, acts, omissions, and conduct that form, in pertinent part, the factual basis of the causes of action in plaintiff's Complaint having occurred on the grounds of a U.S. Department of Energy (USDOE) owned laboratory and research facility, i.e., Brookhaven National Laboratory, that is a federal enclave located in the Eastern District of New York. See, 28 U.S.C. §1391(b)(2).

## JURY DEMAND

21. That plaintiffs demand trial by jury of all issues presented in this action that are triable by a jury as of right pursuant to the applicable statutes and court rules.

## FACTS COMMON TO ALL CAUSES OF ACTION

### AUI Caused Trichloroethylene (TCE) Pollution, Contamination & Exposures at Brookhaven National Laboratory Resulting in Hazards, Dangers & Risks to Human Health, Safety & Welfare

22. The events, actions, conduct, activities, omissions, transactions, occurrences, incidents and circumstances at issue in this matter include, but are not limited to, the following facts:

23. Brookhaven National Laboratory (BNL) occupies an approximately 5,300-acre site in Upton, NY, in Suffolk County on Long Island.

24. BNL is a research laboratory and facility with numerous buildings, structures and scientific facilities.

25. BNL has existed since 1947.

26. USDOE has provided for the operation of BNL by annual "operating contract" with a private "operating contractor" since 1947.

27. The annual "operating contract" was lucrative to whoever was the "operating contractor".

28. The "operating contractor" for BNL during the period 1947 – 1998 was defendant ASSOCIATED UNIVERSITIES, INC. (AUI).

29. AUI collected billions of taxpayer dollars in revenue as the "operating contractor" for BNL.

30. USDOE terminated the "operating contract" with AUI in 1998 for the latter's breach and gross neglect of its contractual duties and responsibilities to safely and properly operate BNL.

31. Pursuant to the "operating contract", the "operating contractor" for BNL was responsible to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site.

32. The responsibilities of the BNL "operating contractor" included, but were not limited to, the following: (1) protection and conservation of the surrounding environment and environmental resources at the laboratory and on the site; (2) formulation, development, promulgation, and implementation of safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protection of the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

33. The responsibilities of the BNL "operating contractor" amounted to duties to use reasonable care to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site.

34. The responsibilities of the BNL "operating contractor" amounted to duties to use reasonable care to (1) protect and conserve the surrounding environment and environmental resources at the laboratory and on the site; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and

7

health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protect the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

35. AUI extensively used Trichloroethylene (TCE) at BNL in pertinent part, as a solvent, degreaser, cleaning agent and disinfecting agent despite its known toxicity to humans.

36. AUI extensively used TCE at BNL in many different activities including, but not limited to, the following: machining; metalworking; metal fabricating; milling; supercomputer operations; computer network maintenance, repair and reconfiguration; electrical equipment maintenance and repair; telephone and telecommunications maintenance and repair; information technology equipment maintenance and repair; construction; electrical contracting; scientific facility construction; scientific facility maintenance and repair; laboratory maintenance; laboratory experiments; custodial services; and housekeeping services.

37. AUI extensively used TCE at BNL in the course of work, operations, maintenance, services, research and many other activities in many buildings, structures, facilities, and locations.

38. AUI extensively used TCE at BNL as work supplies and materials given to computer operators, computer network technicians, information technology technicians, electronic technicians, telephone technicians, telecommunications technicians, machinists, metalworkers, scientific facility technicians, electricians, construction laborers, riggers, custodians and housekeepers for use in their customary, habitual and routine work activities, responsibilities and duties.

39. AUI extensively used TCE at BNL as work supplies and materials dispensed to workers who were employees, contractors and/or subcontractors.

40. AUI extensively purchased, ordered, delivered, stored, dispensed and used TCE at BNL in aerosol, spray, liquid and bulk form.

41. AUI extensively purchased, ordered, stored, dispensed and used TCE at BNL in the forms of aerosol can/bottle, spray can/bottle, bottled liquid, 55 gallon drums/barrels and liquid bulk delivery for tank storage.

42. Among the uses of TCE at BNL by AUI were the following:

43. Computer operators and technicians at BNL were supplied TCE to use in aerosol can/bottle, spray can/bottle, and bottled liquid form as solvents, degreasers and cleaning solutions to remove dust, micro-debris and particles off the head drives, tape drives and other components of supercomputers between computer tape spool changes.

44. Computer network technicians, information technology technicians, electronic technicians, telephone technicians, and telecommunications technicians at BNL were supplied TCE in aerosol can/bottle, spray can/bottle, and bottled liquid form as solvents, degreasers and cleaning solutions to remove dust, dirt and particles from circuit boards, transistors, silicon chips, wiring, wire connections, electrical and mechanical components, supercomputers, computers, and electrical, telephone, and telecommunications equipment.

45. Electricians, construction laborers and other tradesmen at BNL were supplied TCE in aerosol can/bottle, spray can/bottle, and bottled liquid form as solvents, degreasers and cleaning solutions to remove grease, dirt, grime and particles from electrical switchbox components, gear box components, piping, conduit, connections, solid state circuits, circuit boards, wiring, and adapters during construction work and activities.

46. Machinists, metalworkers, millers, fabricators and machine shop workers at BNL were supplied TCE in liquid, drum, barrel and bulk form as solvents, degreasers and cleaning solutions to remove grease, dirt, grime and particles from metal parts, components, apparatus, equipment, appliances, articles and objects before installation and operations.

47. Scientists and scientific facility technicians at BNL were supplied TCE in aerosol can/bottle, spray can/bottle, bottled liquid, liquid, drum, barrel and bulk form as solvents, degreasers and cleaning solutions to remove grease, dirt, grime and particles from the scientific facilities and instruments in between experiments.

48. Riggers, custodians and housekeepers were supplied TCE in aerosol can/bottle, spray can/bottle, bottled liquid, liquid, drum, barrel and bulk form as solvents, degreasers and cleaning solutions to remove dirt, dust, particles and microorganisms from numerous BNL buildings, structures, facilities, and locations throughout the site.

49. AUI advised, instructed, directed and/or ordered BNL workers to discharge, release, discard and dispose of TCE after use in sink, basin and floor drains, sewers, septic sewer system, sewer pipes, cesspools, soils, trenches, shafts, holes, discharge basins and landfills.

50. TCE was known to be toxic to humans in the 1950's.

51. TCE was banned from use in food and pharmaceutical production throughout most developed nations in the world by the 1970's due to its toxicity.

52. TCE was considered a probable and/or suspected human carcinogen by the 1970's.

53. In 1978, toxicology researchers at BNL published an article in a peer reviewed toxicology and pharmacology scientific journal that described experiments designed to measure the toxicity of TCE. The article described experiments that showed TCE to be toxic whether the exposure was exclusive or in combination with other chemicals.

54. The U.S. Environmental Protection Agency (USEPA) declared BNL a Superfund Site in

1989, in pertinent part, due to AUI's severe and pervasive TCE environmental pollution and toxic contamination in the buildings, structures, facilities, groundwater, soils, waste disposal system, sewer system, cesspools, surface waters and ambient air throughout the site.

55. AUI did not safely use TCE at BNL.

56. AUI did not safely discharge, release, discard and dispose of TCE at BNL.

57. AUI's protracted and continuous failures to safely use, discharge, release, discard and dispose of TCE at BNL directly caused severe and extensive TCE environmental pollution and toxic contamination of BNL's soils, groundwater, surface water, ambient air, buildings, facilities, structures and land.

58. AUI's extensive TCE environmental pollution and toxic contamination of BNL subjected workers at the site, including MICHELLE MCGOWAN, to TCE exposure that caused extreme hazards, dangers, and risks to human health, safety and welfare.

59. AUI violated the terms of the "operating contract" by failing to meet its responsibilities, duties and obligations as the BNL "operating contractor" to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site, due to its extensive TCE environmental pollution and toxic contamination of BNL.

60. AUI violated the terms of the "operating contract" by failing to meet its responsibilities,

duties and obligations as the BNL "operating contractor" to ensure the following properly occurred: (1) protection and conservation of the surrounding environment and environmental resources at the laboratory and on the site; (2) formulation, development, promulgation, and implementation of safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protection of the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

61. AUI violated its duties to use reasonable care to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site, due to its extensive TCE environmental pollution and toxic contamination of BNL.

62. AUI violated its duties to use reasonable care to (1) protect and conserve the surrounding environment and environmental resources at the laboratory and on the site; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and

13

measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protect the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

63. AUI breached its duties to use reasonable care to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site, due to its extensive TCE environmental pollution and toxic contamination of BNL.

64. AUI breached its duties to use reasonable care to properly (1) protect and conserve the surrounding environment and environmental resources at the laboratory and on the site; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protect the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

**AUI's Trichloroethylene (TCE) Pollution, Contamination & Exposures
at BrookhavenNational Laboratory Caused Michelle McGowan's
Non-Hodgkin's Lymphoma and Other Related Conditions**

65. AUI's severe and extensive TCE environmental pollution and toxic contamination of BNL subjected MICHELLE MCGOWAN to TCE exposure that caused extreme hazards, dangers, and risks to her health, safety and welfare.

66. AUI's severe and extensive TCE environmental pollution and toxic contamination of BNL subjected MICHELLE MCGOWAN to TCE exposure that caused, contributed to and/or was a substantial factor resulting in her non-Hodgkin's lymphoma and other related conditions, complications, injuries, illnesses, harm and losses.

**AUI's Severe and Extensive TCE Pollution and Contamination at
BNL Violated the Operating Contract & Federal Law**

67. Despite knowledge of the hazards, dangers and risks to human health, safety and welfare presented by TCE, AUI failed to safely use, store, handle, discharge, release, discard and dispose of TCE at BNL resulting in severe and extensive TCE environmental pollution and toxic contamination at the laboratory site.

68. AUI's failure to safely use, store, handle, discharge, release, discard and dispose of TCE at BNL was protracted and continuous throughout its tenure as the "operating contractor".

69. AUI violated the Safe Drinking Water Act (SDWA), Clean Air Act (CAA), Resource Conservation and Recovery Act (RCRA) and Toxic Substance Control Act (TSCA), in pertinent part, because of its continuous and protracted failures to safely use, store, handle,

discharge, release, discard and dispose of TCE at BNL resulting in severe and extensive TCE environmental pollution and toxic contamination at the laboratory site.

**BNL's TCE Pollution & Contamination**

70. Subsequent to the USEPA declaring BNL a "Superfund Site" in 1989, AUI's extensive TCE environmental pollution and toxic contamination of the laboratory site was well documented.

71. A 1994 BNL consulting engineers' report described a "TCE Spill Area" on Brookhaven Avenue directly in the middle of the campus in the most densely populated area containing most of the buildings, structures and facilities on the site. This "TCE Spill Area" existed since the 1950's and was caused by the direct discharge of TCE onto the ground.

72. A 1994 analysis of cesspool sludge sampling at BNL found TCE contamination levels at 300,000 μg/kg. The analysis demonstrated massive TCE pollution and contamination as a result of negligent disposal practices into drains emptying to the sewers, septic sewer system and cesspools with consequent leakage into soils, surface waters, groundwater and the underlying aquifer. The report warned that the "presence of high levels of …… TCE at this location represents a potential source of groundwater contamination".

73. A 1996 USEPA report on BNL pollution and contamination contains tables showing elevated levels of TCE in the groundwater 4 times the above the federal and state standards for maximum contaminant level (MCL). The federal and state standards are 5 MCL; however, the report showed that the TCE contamination level in BNL's groundwater was 20 MCL.

16

74. USEPA and New York State Department of Environmental Conservation (NYSDEC) performed an environmental audit and inspection of BNL during 1997 – 1998.

75. NYS AG Vacco's report, dated October 16, 1997, entitled "Brookhaven National Laboratory: At The Crossroads", described some of the results of the USEPA and NYSDEC audit and inspection:

> "The involved agencies each stressed that the contamination posing the most serious threat was caused by _chemical wastes_, not tritium or other radioactive contaminants. These _chemical wastes_ include 1.1.1,-trichloroethane ("TCA"), EDB, carbon tetrachloride, and _trichloroethylene ("TCE")_. …… The Review found that TCA and _TCE, commonly used in many Laboratory facilities as equipment degreasers, were often discharged to sinks and drains or poured directly onto the ground_."

(Emphasis added.)

76. The USEPA charged AUI with violations of the Safe Drinking Water Act (SDWA), Clean Air Act (CAA), Resource Conservation and Recovery Act (RCRA) and Toxic Substance Control Act (TSCA) on March 9, 1998.

77. A USEPA report on BNL contamination, dated April 14, 2000, stated that "_[t]richloroethene (TCE) was detected in wells above the MCL of 5 ppb at levels ranging from 7 to 27 ppb_, primarily in the area between Princeton Avenue and the South Boundary Road."

78. This USEPA report from the year 2000 also states,

> "[t]he VOCs found in the Magothy aquifer above the drinking water standard off-site in the OU III groundwater plume were carbon tetrachloride at 7090 ppb,

17

chloroform at 45 ppb, and _trichlorothene (TCE) at 30 ppb_. These data are from the 1998 and 1999 sampling of an off-site monitoring well located 275 to 285 feet below land surface within the Magothy Aquifer that was sampled as part of our going groundwater monitoring program. The depth of the monitoring well is 275 to 285 feet below land surface (approximately 187 to 197 feet below mean sea level)".

79. The 2000 USEPA report also identifies the "TCE Spill Area" as a location where TCE was directly discharged onto the ground in the 1950's.

80. This 2000 USEPA report contains a table that shows excessive TCE contamination levels were found in soils (0.7 mg/kg), subsurface soils (0.06 mg/kg), surface water (11 µg/L) and groundwater (5 µg/L).

81. Also in 2000, USEPA issued groundwater survey maps showing plumes of toxic chemical and radioactive isotope pollution and contamination underlying BNL's OU III, i.e., the location on the site with the highest daily population density and highest number of occupied buildings, structures and facilities. This location is also known as the "Central Campus". The groundwater survey maps depict plumes for TVOCs (see, Exhibit 1, TVOC Groundwater Plume Map). The TVOCs in the groundwater plume include TCE at levels in excess of the federal and state MCLs.

82. In 2002, BNL issued a report entitled Groundwater Protection Management Program Description that described the continuing existence of TCE contamination in groundwater at the site.

83. BNL issued a "Final Five Year Report for Brookhaven National Laboratory Superfund Site"

18

in July 2006 after years of remediation efforts. In pertinent part, the report stated the following about TCE contamination at the site:

> "VOC contaminated groundwater including ***trichloroethene (TCE)*** [is] on and off of BNL property"

> "Groundwater: *The primary contaminants in the groundwater on and off of the BNL site include <u>trichloroethene (TCE)</u> and tritium. Tritium has not been detected above the drinking water standards, and <u>TCE concentrations are slightly above the standards</u>.*"

(Emphasis added.)

84. The U.S. Department of Labor (USDOL) has issued Site Exposure Matrices for BNL that document numerous buildings, facilities, structures and locations at the site that were polluted and contaminated with TCE sufficient to expose people to the hazards, dangers and risks presented by this toxic chemical.

85. The foregoing governmental and BNL reports, records and documents confirm AUI's severe and extensive TCE pollution and contamination that existed at the laboratory site during the period of time that MICHELLE MCGOWAN worked there as a bank teller.

## TCE Toxicity & Carcinogenicity

86. TCE was classified and accepted as a "known human carcinogen" in the U.S. since 2016.

87. TCE was also classified and scientifically accepted as a toxic substance hazardous to human health in other ways since the 1950's.

88. The U.N. World Health Organization (WHO) and International Association for Research on Cancer (IARC) declared TCE to be a known human carcinogen in 2011.

89. TCE was declared a known human carcinogen by the USEPA, NIH/NIEHS National Toxicity Program, and U.S. Health & Human Services (USHHS) Agency for Toxic Substances and Disease Registry in or about 2016.

90. The 14th Report on Carcinogens to Congress described TCE as a known human carcinogen on November 3, 2016.

91. TCE exposure can cause cancers and other diseases in humans through mutagenic, genotoxic and non-genotoxic mechanisms.

92. TCE exposure can cause kidney cancer, kidney failure, liver cancer, liver failure, non-Hodgkin's lymphoma, and esophageal cancer among other illnesses, injuries and conditions.

93. Pathogenic TCE exposure routes are inhalation, trans-dermal contact, ingestion, and vapor intrusion into the ambient indoor air of enclosed structures.

**Michelle McGowan's Experiences at BNL**

**Michelle McGowan's Employment at BNL**

94. MICHELLE MCGOWAN, now 66 years old, worked on the grounds of Brookhaven National Laboratory during the years 1977 – 1983 as a bank teller employed by Bankers Trust Co. and Barclays Bank.

95. Bankers Trust Co. and Barclays Bank were not contractors or subcontractors of the USDOE or AUI at the time Ms. MCGOWAN was working at BNL during 1977 – 1983.

96. Bankers Trust Co. and Barclays Bank were permitted to operate bank branches at BNL as a convenience to AUI employees during 1977 – 1983.

97. Bankers Trust Co. and Barclays Bank were permitted to occupy Building 193 by AUI to operate bank branches during 1977 – 1983.

98. There was no lease or contract between Bankers Trust Co. and USDOE or AUI for the provision of banking services or the use of the premises during 1977 – 1983.

99. There was no lease or contract between Barclays Bank and USDOE or AUI for the provision of banking services or the use of the premises during 1977 – 1983.

100.    Bankers Trust Co. and Barclays Bank were essentially "permittees" or "licensees" authorized to occupy Building 193 to provide banking services to AUI employees during 1977 – 1983.

101.    MICHELLE MCGOWAN was not the employee of a USDOE contractor or subcontractor when she worked for Bankers Trust Co. and Barclays Bank at BNL.

102.    MICHELLE MCGOWAN was not a "covered employee" or "covered employee with

cancer" under the EEOICPA pursuant to 42 U.S.C. §§ 7384l and 7384s when she worked for

Bankers Trust Co. and Barclays Bank at BNL.


103.    MICHELLE MCGOWAN was essentially the employee of "permittees" or "licensees"

Bankers Trust Co. and Barclays Bank when she worked at BNL.


104.    MICHELLE MCGOWAN was essentially an "authorized visitor" at BNL when she

worked there for Bankers Trust Co. and Barclays Bank.


105.    The United States Department of Labor (USDOL) ruled on July 22, 2013, that Ms.

MCGOWAN was not a "covered employee" pursuant to 42 U.S.C. §§ 7384l and 7384s (see,

Exhibit 2, USDOL Notice of Final Decision and Review of the Written Record, dated July

22, 2013).


106.    AUI cannot assert immunity to suit against the claims asserted by Ms. MCGOWAN

pursuant to 42 U.S.C. §§ 7385b and 7385c.


**Michelle McGowan's BNL TCE Exposure**
**Caused Her Non-Hodgkin's Lymphoma**

107.    The bank where MICHELLE MCGOWAN worked during 1977 – 1983 was located in

what was then Building 193 (now replaced by Building 735) in the BNL "Central Campus"

area.

108.  Ms. MCGOWAN was exposed to hazardous, dangerous and unsafe levels of TCE pollution and contamination at BNL through the routes of inhalation, trans-dermal contact, ingestion and vapor intrusion in the ambient air.

109.  Ms. MCGOWAN drank water drawn from the TCE polluted and contaminated groundwater.

110.  Ms. MCGOWAN drank coffee and tea brewed from the TCE polluted and contaminated water supply.

111.  Ms. MCGOWAN washed her hands and utensils with the TCE polluted and contaminated water.

112.  Ms. MCGOWAN breathed in fumes or vapors from the TCE polluted and contaminated soils, groundwater, surface water, buildings, facilities, structures and land.

113.  Ms. MCGOWAN sustained trans-dermal contact from touching surfaces that were polluted and contaminated by TCE.

114.  Ms. MCGOWAN's TCE exposure routes included inhalation, trans-dermal contact, ingestion and vapor intrusion in the ambient air.

115.  Ms. MCGOWAN's exposure to TCE at BNL caused her non-Hodgkin's lymphoma.

**Michelle McGowan's Knowledge that TCE Exposure
at BNL Caused Her Non-Hodgkin's Lymphoma**

116.    MICHELLE MCGOWAN was unaware that TCE exposure at BNL had caused her non-

Hodgkin's lymphoma until on or about October 7, 2019.

117.    MCGOWAN was diagnosed with non-Hodgkin's lymphoma in 2006.

118.    After a very difficult course of chemotherapy, MCGOWAN's non-Hodgkin's lymphoma

went into remission.

119.    MCGOWAN is aware that her non-Hodgkin's lymphoma presents a risk of recurrence.

120.    MCGOWAN filed for Energy Employees Occupational Illness Program (EEOICP)

compensation benefits under Parts B and E for her non-Hodgkin's lymphoma in 2012.

121.    MCGOWAN filed for EEOICP compensation benefits in 2012 because she suspected

that exposure to either radiation or toxic chemicals at BNL caused her non-Hodgkin's

lymphoma.

122.    The USDOL EEOICP denied MCGOWAN's application for compensation benefits on

July 22, 2013 (see, Exhibit 2, USDOL Notice of Final Decision and Review of the Written

Record, dated July 22, 2013); therefore, MCGOWAN could not confirm her suspicions that

exposure to radiation or toxic chemicals at BNL caused her illness.

123.   While MCGOWAN suspected that her non-Hodgkin's lymphoma was caused by exposure to either radiation or toxic substances at BNL in 2012, she did not know that TCE caused her cancer until on or about October 7, 2019.

124.   MCGOWAN did not know that TCE exposure at BNL was the cause of her non-Hodgkin's lymphoma until on or about October 7, 2019.

125.   MCGOWAN obtained the knowledge that TCE exposure at BNL caused her non-Hodgkin's lymphoma on or about October 7, 2019, after learning about news reports pertaining to lawsuits brought by former BNL workers for cancers and illnesses caused by TCE exposure.

126.   MCGOWAN wasn't aware that TCE was a toxic chemical until on or about October 7, 2019.

127.   MCGOWAN wasn't aware that TCE was a known human carcinogen until on or about October 7, 2019.

128.   MCGOWAN wasn't aware that she had been exposed to TCE at BNL until on or about October 7, 2019.

129.   MCGOWAN wasn't aware of the specific routes of transmission for TCE exposure until on or about October 7, 2019.

130.    MCGOWAN didn't even know what TCE is until on or about October 7, 2019.

131.    Prior to October 7, 2019, MCGOWAN was entirely unaware that exposure to TCE at BNL caused her non-Hodgkin's lymphoma.

132.    The technical, scientific or medical knowledge and information sufficient to ascertain the causal connection between MCGOWAN's TCE exposure at BNL and her development of non-Hodgkin's lymphoma had not been discovered, identified or determined by her until on or about October 7, 2019.

133.    MCGOWAN could not have possibly identified TCE exposure at BNL as the specific "cause of injury" for her non-Hodgkin's lymphoma until approximately October 7, 2019.

### FIRST CAUSE OF ACTION:
### NEGLIGENCE

134.    Plaintiffs MICHELLE MCGOWAN and JOHN MCGOWAN repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "133" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

135.    Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to all employees, contractors, subcontractors, visitors, occupants and other people at and within the vicinity of the site, including MICHELLE MCGOWAN, to use reasonable care to safely and properly operate, control, manage, supervise, direct, administer, oversee

and conduct all research, work, operations, activities, services and functions at the laboratory and on the site.

136.    Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to all employees, contractors, subcontractors, visitors, occupants, and other people at and within the vicinity of the site, including MICHELLE MCGOWAN, to use reasonable care to properly (1) protect and conserve the surrounding environment and environmental resources at the laboratory and site from pollution and contamination; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and hazards, dangers and risks to health, safety and welfare from pollution and contamination; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and hazards, dangers and risks to human health, safety and welfare; and (4) protect the health, safety and welfare of employees, contractors, visitors, occupants, and the general public at or in the vicinity of the site against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

137.    Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to use reasonable care to prevent environmental pollution and toxic contamination so as to ensure the safety of the site and protect the health, safety and welfare of people at, on or in the vicinity of the site.

27

138.    Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to all employees, contractors, subcontractors, visitors, occupants and other people at and within the vicinity of the site, including MICHELLE MCGOWAN, to use reasonable care to safely and properly operate, control, direct, manage, supervise, monitor, oversee, conduct, and regulate the laboratory's activities, research, business, services, functions, facilities, equipment, supplies, assets, and property in a safe manner to protect the health, safety and welfare of those persons at, on and in the vicinity of the site.

139.    Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to all BNL employees, contractors, subcontractors, workers, visitors, occupants and other person at or in the vicinity of the site, including MICHELLE MCGOWAN, to use reasonable care in properly and adequately providing for the safe use, handling, storage, discharge, release, discarding and disposal of TCE.

140.    AUI breached and violated the duties owed to MICHELLE MCGOWAN to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, services and functions at the laboratory and on the site.

141.    AUI breached and violated the duties owed to MICHELLE MCGOWAN to properly (1) protect and conserve the surrounding environment and environmental resources at the laboratory and site from pollution and contamination; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and

measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and hazards, dangers and risks to health, safety and welfare from contamination; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and hazards, dangers and risks to human health, safety and welfare from pollution and contamination; and (4) protect the health, safety and welfare of employees, contractors, visitors, occupants, and the general public at or in the vicinity of the site against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

142.  AUI breached and violated the duties owed to MICHELLE MCGOWAN to safely and properly operate, control, direct, manage, supervise, monitor, oversee, conduct, and regulate the laboratory's activities, research, business, services, functions, facilities, equipment, supplies, assets, and property in a safe manner to protect the health, safety and welfare of those persons at, on and in the vicinity of the site.

143.  AUI breached and violated the duties owed to MICHELLE MCGOWAN to safely and properly prevent environmental pollution and toxic contamination so as to ensure the safety of the site and protect the health, safety and welfare of people at, on or in the vicinity of the site.

144.  AUI breached and violated the duties owed to MICHELLE MCGOWAN to properly and adequately provide for the safe use, storage, handling, discharge, release, discarding and

disposal of TCE.

145.    AUI negligently failed to safely and properly operate, control, manage, supervise, direct, administer, oversee and conduct all BNL research, work, operations, activities, services and functions.

146.    AUI negligently failed to properly (1) protect and conserve the surrounding environment and environmental resources at the laboratory and site from pollution and contamination; (2) formulate, develop, promulgate, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and hazards, dangers and risks to health, safety and welfare from pollution and contamination; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and hazards, dangers and risks to human health, safety and welfare from pollution and contamination; and (4) protect the health, safety and welfare of employees, contractors, visitors, occupants, and the general public at or in the vicinity of the site against the hazards, dangers, and risks presented by environmental pollution and toxic contamination.

147.    AUI negligently failed to safely and properly to operate, control, direct, manage, supervise, monitor, oversee, conduct, and regulate the laboratory's activities, research, business, services, functions, facilities, equipment, supplies, assets, and property in a safe manner to protect the health, safety and welfare of those persons at, on and in the vicinity of

the site.

148.    AUI negligently failed to safely and properly prevent environmental pollution and toxic

contamination so as to ensure the safety of the site and protect the health, safety and welfare

of people at, on or in the vicinity of the BNL site.


149.    AUI negligently failed to properly and adequately provide for the safe use, handling,

storage, discharge, release, discarding and disposal of TCE at BNL.


150.    AUI's foregoing negligence and breaches and violations of the duties owed to

MICHELLE MCGOWAN and others caused BNL to be severely and extensively polluted

and contaminated with TCE.


151.    AUI's severe and extensive TCE pollution and contamination at BNL subjected

MICHELLE MCGOWAN to exposure to this toxic chemical to cause hazards, dangers and

risks to her health, safety and welfare.


152.    AUI's negligent severe and extensive TCE pollution and contamination at BNL caused,

contributed to and were substantial factors resulting in MICHELLE MCGOWAN's non-

Hodgkin's lymphoma and other related conditions, complications, illnesses, injuries, harm

and losses.


153.    The foregoing negligence of AUI caused, contributed to and were substantial factors

resulting in MICHELLE MCGOWAN's non-Hodgkin's lymphoma and other related conditions, complications, illnesses, injuries, harm and losses, conscious pain and suffering, grave injuries, loss of function and use of an organ system, consequential medical sequelae, scarring, disfigurement, risk of recurrence, worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

154.    The injuries, illnesses, harm, losses and damages sustained by MICHELLE MCGOWAN were caused solely and wholly by virtue of the foregoing negligent acts, omissions and conduct of AUI, and were in no way caused and/or contributed to by Ms. MCGOWAN.

155.    By reason of the foregoing, plaintiff MICHELLE MCGOWAN is entitled to compensatory and punitive damages from defendant AUI for her non-economic and economic injuries.

156.    By reason of the foregoing, plaintiff MICHELLE MCGOWAN demands judgment against defendant AUI in the amount of $25,000,000.00 in compensatory and punitive damages.

## SECOND CAUSE OF ACTION:
## STRICT LIABILITY FOR
## ABNORMALLY DANGEROUS ACTIVITIES

157.   Plaintiffs MICHELLE MCGOWAN and JOHN MCGOWAN repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "156" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

158.   AUI's TCE use, misuse, storage, handling, discharge, release, discarding and disposal of TCE at BNL were negligent, reckless, and/or intentionally careless and constituted an ultra-hazardous or abnormally dangerous activity for which they are strictly liable.

159.   AUI negligently used, misused, stored, handled, discharged, released, discarded and disposed of TCE at BNL with the knowledge that TCE was toxic, carcinogenic and/or ultra-hazardous and abnormally dangerous to human health, safety and welfare.

160.   AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct resulted in the extensive TCE environmental pollution and contamination of BNL's buildings, structures, facilities, soils, surface waters, groundwater, drinking water supplies, land, and ambient air.

161.   AUI's foregoing ultra-hazardous or abnormally dangerous TCE related activities and conduct resulted in extensive TCE environmental pollution and contamination at BNL that caused, created and resulted in foreseeable risks of personal injury, illness, harm and/or death to workers at the site, including MICHELLE MCGOWAN.

162.    AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct resulted in extensive TCE environmental pollution and contamination at BNL that caused and created a high degree of risk to the health, safety and welfare of workers at the site, including MICHELLE MCGOWAN.

163.    AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct at BNL caused and created a high risk of harm to workers at the site, including MICHELLE MCGOWAN, that could not otherwise be eliminated without closure of the laboratory.

164.    AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct at BNL were not a matter of common usage.

165.    AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct at BNL in a densely populated location presented such a high degree of hazards, dangers and risks to human health, safety and welfare to workers at the site, including MICHELLE MCGOWAN, that such hazards, dangers and risks outweighed its value to the community.

166.    AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and conduct at BNL were inappropriate to the densely populated location.

167.    AUI allowed and/or caused these ultra-hazardous and abnormally dangerous TCE related

activities and conduct to exist at BNL during 1977 – 1983 encompassing the period of time
that MICHELLE MCGOWAN worked there.

168.    The foregoing hazards, dangers and risks of ultra-hazardous and abnormally dangerous
TCE related activities and conduct to BNL workers, including MICHELLE MCGOWAN,
outweighed any value associated with the same.

169.    AUI is strictly liable to MICHELLE MCGOWAN for her non-Hodgkin's lymphoma and
the related injuries, illnesses, harm and losses caused by the foregoing ultra-hazardous and
abnormally dangerous TCE related activities and conduct at BNL.

170.    AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and
conduct caused, contributed to and were substantial factors resulting in MICHELLE
MCGOWAN's non-Hodgkin's lymphoma and other related conditions, complications,
illnesses, injuries, harm, and losses.

171.    AUI's foregoing ultra-hazardous and abnormally dangerous TCE related activities and
conduct caused, contributed to and were substantial factors resulting in MICHELLE
MCGOWAN's non-Hodgkin's lymphoma and other related conditions, complications,
illnesses, injuries, harm, and losses, conscious pain and suffering, grave injuries, loss of
function and use of an organ system, consequential medical sequelae, scarring,
disfigurement, risk of recurrence, worsened prognosis, decreased life expectancy, distress,
anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss

of enjoyment of life.

172.    The injuries, illnesses, harm, and losses sustained by MICHELLE MCGOWAN were

caused solely and wholly by virtue of the foregoing acts, omissions and conduct of AUI and

were in no way caused and/or contributed to by Ms. MCGOWAN.

173.    By reason of the foregoing, plaintiff MICHELLE MCGOWAN is entitled to

compensatory and punitive damages from defendant AUI for her non-economic and

economic injuries.

174.    By reason of the foregoing, plaintiff MICHELLE MCGOWAN demands judgment

against defendant AUI in the amount of $25,000,000.00 in compensatory and punitive

damages.

**THIRD CAUSE OF ACTION:**
**GROSS NEGLIGENCE**

175.    Plaintiffs MICHELLE MCGOWAN and JOHN MCGOWAN repeat, re-allege and

reiterate each and every allegation contained in paragraphs numbered "1" through "174" of

the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

176.    AUI's foregoing TCE related activities and conduct at BNL were grossly negligent,

reckless, and/or intentional.

177.    AUI's foregoing TCE related activities and conduct at BNL were undertaken in reckless

disregard of the health, safety and welfare of BNL workers, including MICHELLE MCGOWAN.

178.    AUI's foregoing TCE related activities and conduct at BNL were undertaken with gross indifference to the health, safety and welfare of BNL workers, including MICHELLE MCGOWAN.

179.    AUI's foregoing TCE related activities and conduct at BNL were undertaken with the knowledge, awareness and/or reason to know that it would present an unreasonable risk of injury, illness, harm, loss and/or death to workers, including MICHELLE MCGOWAN.

180.    AUI's foregoing TCE related activities and conduct at BNL knowingly, willfully and intentionally created an unreasonable risk of physical harm to workers, including MICHELLE MCGOWAN.

181.    AUI's foregoing TCE related activities and conduct at BNL resulted in the extensive TCE environmental pollution and contamination of the buildings, structures, facilities, soils, surface waters, groundwater, drinking water supplies, land, and ambient air at the site.

182.    AUI's foregoing TCE related activities and conduct at BNL were grossly negligent and caused, created and resulted in the foreseeable risks of personal injury, illness, harm and/or death to BNL workers, including MICHELLE MCGOWAN.

183.   AUI's foregoing grossly negligent TCE related activities and conduct at BNL caused, contributed to and were substantial factors resulting in MICHELLE MCGOWAN's non-Hodgkin's lymphoma and other related conditions, complications, illnesses, injuries, harm, and losses.

184.   AUI's foregoing grossly negligent TCE related activities and conduct caused, contributed to and were substantial factors resulting in MICHELLE MCGOWAN's non-Hodgkin's lymphoma and other related conditions, complications, illnesses, injuries, harm, and losses, conscious pain and suffering, grave injuries, loss of function and use of an organ, consequential medical sequelae, scarring, disfigurement, risk of recurrence, worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

185.   The injuries, illnesses, harm, and losses sustained by MICHELLE MCGOWAN were caused solely and wholly by virtue of the foregoing acts, omissions and conduct of AUI and were in no way caused and/or contributed to by Ms. MCGOWAN.

186.   By reason of the foregoing, plaintiff MICHELLE MCGOWAN is entitled to compensatory and punitive damages from defendant AUI for her non-economic and economic injuries.

187.   By reason of the foregoing, plaintiff MICHELLE MCGOWAN demands judgment against defendant AUI in the amount of $25,000,000.00 in compensatory and punitive damages.

## FOURTH CAUSE OF ACTION:
## LOSS OF CONSORTIUM

188.   Plaintiffs MICHELLE MCGOWAN and JOHN MCGOWAN repeat, re-allege and reiterate each and every allegation contained in paragraphs numbered "1" through "187" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

189.   That all times hereinafter mentioned, plaintiff JOHN MCGOWAN was and is the lawfully wedded husband of plaintiff MICHELLE MCGOWAN and, as such, was and is entitled to the services, consortium and society of MICHELLE MCGOWAN.

190.   By reason of the foregoing negligence, strict liability and gross negligence of the defendant AUI, plaintiff JOHN MCGOWAN was deprived of the aforesaid services, consortium and society of MICHELLE MCGOWAN.

191.   By reason of the foregoing, plaintiff JOHN MCGOWAN is entitled to monetary damages for his loss of services, consortium and society of MICHELLE MCGOWAN.

192.   By reason of the foregoing, plaintiff JOHN MCGOWAN is entitled to compensatory and punitive damages from defendant AUI for his non-economic and economic injuries.

193.    By reason of the foregoing, plaintiff JOHN MCGOWAN demands judgment against

defendant AUI in the amount of $5,000,000.00 for compensatory and punitive damages.


**WHEREFORE,** plaintiffs demand judgment awarding compensatory and punitive

damages against defendant AUI on the first, second, and third causes of action in the Complaint

in the amount of $25,000,000.00 for each cause of action; $5,000,000.00 compensatory and

punitive damages against defendant AUI on the fourth cause of action in the Complaint; and the

interest, costs and disbursements of this action, together with such other and further relief as the

court deems just and proper.

Dated: New York, NY
         May 18, 2020

Yours, etc.,

*s/ J. Lanni*

_____

**JOSEPH LANNI**
THE JACOB FUCHSBERG LAW FIRM, LLP
Attorneys for Plaintiff
MICHELLE MCGOWAN
and JOHN MCGOWAN
3 Park Avenue, 37th Floor
New York, New York 10016
Tel.: 212.869.3500
Fax: 212.398.1532
j.lanni@fuchsberg.com
